No. 22-3577

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JACQUELYN BERRY,

*Plaintiff-Appellant*,

v.

UNITED STATES POSTAL SERVICE,

*Defendant-Appellee*.

On Appeal from the United States District Court
Southern District of Ohio, Eastern Division, Honorable Judge Kimberly Jolson
Case No. 2:20-cv-5327

**BRIEF OF PLAINTIFF-APPELLANT JACQUELYN BERRY**

Erica Ann Probst (0073486)
Andrea L. Salvino (0097768)
KEMP, SCHAEFFER & ROWE CO., LPA
88 W. Mound Street, Columbus, Ohio 43215
(614) 232-8692
Erica@ksrlegal.com
ASalvino@ksrlegal.com

September 28, 2022                    *Counsel for Plaintiff-Appellant*

## I.   CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 and 6 Cir. R. 26.1, counsel for Plaintiff-Appellants certify that no party to this appeal is a subsidiary or affiliate of a publicly owned corporation and no publicly owned corporation that is not a party to this appeal has a financial interest in the outcome.

/s/ Erica Ann Probst
Erica Ann Probst
*Counsel for Plaintiff-Appellant*

## II.   TABLE OF CONTENTS

I.   **CORPORATE DISCLOSURE STATEMENT** ........................................ II

II.   **TABLE OF CONTENTS** ..................................................................III

III.   **TABLE OF AUTHORITIES** ..............................................................V

IV.   **STATEMENT REGARDING ORAL ARGUMENT**............................VII

V.   **JURISDICTIONAL STATEMENT** ...................................................1

VI.   **STATEMENT OF ISSUES FOR REVIEW**.........................................1

VII.   **STATEMENT OF THE CASE** ........................................................2

    A.   **FACTUAL BACKGROUND**....................................................3

        i.   **Berry Has Devoted Over Thirty Years of Service to the USPS and Wished to Retire as a Supervisor** .........................3

        ii.   **USPS's Timekeeping System was Flawed** .............................3

        iii.   **Kelley Harris Admitted She Manipulated Berry's Time Without Berry's Consent for October 10, 2017** ..........5

        iv.   **Berry was Threatened to Approve the Clock Ring Harris Fabricated or Be Demoted from a Supervisor to a Mail Carrier**...................................................................7

        v.   **USPS Routinely Manipulated Clock Rings Which Prompted a Years Long Clock Ring Audit and Involved Direct Instructions from the Postmaster to "Take Time" from Hourly Employees**....................................8

VIII.   **SUMMARY OF ARGUMENT**........................................................9

IX.   **STANDARD OF REVIEW**..............................................................10

X.   **ARGUMENT**.................................................................................12

    A.   **THE DISTRICT COURT CONTRAVENED FED. R. CIV. P. 56 WHEN IT IMPROPERLY WEIGHED EVIDENCE AND GRANTED SUMMARY JUDGMENT TO DEFENDANT ON PLAINTIFF'S FAILURE TO**

PAY OVERTIME FLSA CLAIM.................................................12

    i.    USPS's Timekeeping System was a Catch-22 for
        Employees .................................................................14

    ii.   The District Court Should Have Applied the
        Relaxed Standard Because USPS' Time Records
        are Inaccurate, and USPS Does Not Dispute Berry
        Worked Overtime on October 10, 2017 .............................16

B.    THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT TO
    USPS IS AGAINST THE WEIGHT OF THE EVIDENCE. .........................19

    i.    Berry Presented Direct Evidence USPS Retaliated
        Against Berry for Complaining about Unpaid Overtime ...20

    ii.   USPS's Reason for Berry's Demotion was Not Honestly
        Held and was Pretext .....................................................21

        a.   Pretext ...................................................................22

XI.    CONCLUSION ..........................................................................25

XII.  CERTIFICATE OF COMPLIANCE WITH RULE 32(A)....................29

XIII. CERTIFICATE OF SERVICE .................................................30

XIV. DESIGNATION OF RELEVANT COURT DOCUMENTS .................31

iv

# III.     TABLE OF AUTHORITIES

**Cases**

*Adair v. Charter Cty. Of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006) ......................19

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970) ...................................12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, (1986)..................................11

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ................................................10

*Conti v. Am. Axle & Mfg.*, 326 F. App'x 900, 913 (6th Cir. 2009).........................13

*DePiero v. City of Macedonia*, 180 F.3d 770, 776 (6th Cir. 1999) .........................10

*Hazle v. Ford Motor Co.*, 464 Mich. 456, 477, 628 N.W.2d 515, 528 (2001)........13

*Hollar v. Cent. Ohio Trauma Sys.*, S.D. Ohio No. 2:18-cv-617, 2020 U.S. Dist.
    LEXIS 113286, at *8 (Apr. 15, 2020) ................................................................17

*InterRoyal Corp. v. Sponseller*, 889 F.2d 108 (6th Cir. 1989) ...............................11

*Jones v. Honda of Am. Mfg.*, 2015 U.S. Dist. LEXIS 28682, 31 Am. Disabilities
    Cas. (BNA) 1127, 2015 WL 1036382 (S.D. Ohio Mar. 9, 2015) ......................12

*Keller v. Miri Microsystems LLC*, 781 F.3d 799, 816 (6th Cir. 2015) ...................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986) .....11

*Moran v. Al Basit LLC*, 788 F.3d 201, 205-06 (6th Cir. 2015) ...............................17

*Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999).........................13

*Pettit v. Steppingstone, Ctr. For the Potentially Gifted*, 429 F.App'x 524, 534
    (6th Cir. 2011).....................................................................................................19

*Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 1998) ................19

*United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993)...........................11

*Viet v. Le*, 951 F.3d 818, 824 (6th Cir. 2020) .........................................................17

*White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012) .....13

*Wood v. Mid-America Mgmt. Corp.*, 192 Fed. App'x 378, 381 (6th Cir. 2006) .....14

**Statutes**

29 F.F.R. § 785.11..................................................................................................14

29 U.S.C. § 215(a)(3)..............................................................................................19

6 Cir. R. 26.1 ............................................................................................................ ii

Fed. R. App. P. 34(a)(2) .......................................................................... vi

Fed. R. Civ. P. 56(a) ...............................................................................10

Fed. R. Civ. P. 56(c)(1)(A) .....................................................................11

FRAP 26.1 ................................................................................................ ii

## IV.   <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiff-Appellant Jacquelyn Berry believes that oral argument is unnecessary and that the Court can decide this case on the written briefs and record. The briefs in this case will fully present the facts, issues, and arguments for the Court, and Appellant does not believe that oral argument will add benefit beyond the briefs. If, however, the Court determines that oral argument is necessary in reaching a determination in this matter, Appellant stands ready to participate.

## V.    JURISDICTIONAL STATEMENT

Subject matter jurisdiction in the district court was predicated on federal question pursuant to 28 U.S.C. § 1331 and the Fair Labor Standards Act 29 U.S.C. § 201, *et seq*, and supplemental jurisdiction pursuant to 29 U.S.C. § 1367, the Ohio Minimum Fair Wage Standards Act, Ohio R.C. § 4111, and the Ohio Constitution Art. II, § 34a. A final judgment (granting Defendant-Appellee's summary judgment and denying Plaintiff-Appellant's summary judgment) was entered by the Southern District of Ohio on June 6, 2022. Notice of appeal was timely filed in the Southern District of Ohio on July 1, 2022.

## VI.    STATEMENT OF ISSUES FOR REVIEW

1. Whether USPS is entitled to summary judgment on Berry's Fair Labor Standards Act claim for failure to pay overtime because the District Court improperly weighed evidence in contravention of Fed. R. Civ. P. 56 and Berry presented sufficient evidence to contradict USPS' arguments and established Berry worked overtime hours for which USPS did not compensate Berry.

2. Whether USPS is entitled to summary judgment on Berry's Fair Labor Standards Act retaliation claim because the District Court improperly weighed evidence in contravention of Fed. R. Civ. P. 56 and Berry presented sufficient evidence USPS retaliated against Berry.

# VII.  STATEMENT OF THE CASE

On October 9, 2020, Jacquelyn Berry ("Berry") filed a Complaint in the United States District Court for the Southern District of Ohio against Defendant United States Postal Service ("USPS") alleging two causes of action including: 1) Failure to pay overtime pursuant to the Fair Labor Standards Act ("FLSA") and 2) retaliation. Complaint, R. 1, PageID#1-7.  Defendant filed its Answer and discovery proceeded.

On January 28, 2022, Defendant and Plaintiff each filed a Motion for Summary Judgment alleging that Judgment was proper on all counts. Berry Motion for Summary Judgment, R. 33, PageID# 1035-84; USPS Motion for Summary Judgment, R.32, PageID# 646-1034. On March 4, 2022, each party filed its Memorandum in Opposition to the opposing party's Motion for Summary Judgment. Berry Memorandum Contra, R. 38, PageID# 1180-1225; USPS Memorandum Contra, R. 37, PageID# 1090-1179. The parties filed their Replies in support of their Motions for Summary Judgment on March 18, 2022. Berry Reply, R.41, PageID# 1458-76; USPS Reply, R.42, PageID# 1477-1501.

On June 6, 2022, the District Court denied Plaintiff's Motion for Summary Judgment on all counts, granted Defendant's Motion for Summary Judgment on all counts, and entered final judgment in favor of Defendant. Order, R.43, PageID# 1502-28. On or about July 1, 2022, Appellant Jacquelyn Berry filed a Notice of Appeal with the United States Court of Appeals for the Sixth Circuit.

## A.    Factual Background

### i.    Berry Has Devoted Over Thirty Years of Service to the USPS and Wished to Retire as a Supervisor

Berry began working for USPS as a mail carrier in 1989. Berry Dep., R. 27, PageID # 82-83. In 2016 Berry sought out an assignment as a 204-b supervisor to help transition her career into a permanent supervisory role. *Id*. at 100-01. A 204-b supervisor role is a position in which the employee acts a supervisor and trains under permanent supervisors to manage and train postal clerks and mail carriers. Kelley Harris Dep., R. 31, PageID# 555.

Berry began her 204-b supervisory detail at the South Columbus station in January 2017. Kelley Harris Decl., R.32-2, PageID# 700. As a 204-b supervisor, Berry was still considered an hourly employee and subject to the FLSA as shown on her Employee Everything Report. Harris Dep., R.31-1, PageID# 609.

### ii.    USPS's Timekeeping System was Flawed

USPS's hourly employees recorded their time by clocking in and out via the the Electronic Badge Reader ("EBR") which downloaded the time into the Time and Attendance Collection System ("TACS"). Berry Dep., R.27, PageID# 107; Harris Dep., R.31, PageID# 539, 559. Each hourly employee swiped their badge on the EBR when the employee began work ("BT"), left for lunch ("OL"), returned from lunch ("IL"), and ended work ("ET"). Berry Dep., R.27, PageID# 108, 113; Harris Dep., R.31, PageID# 537-38. The four swipes created what is called a clock ring. *Id*. If an

employee's swipe was not recorded by the EBR because the EBR was updating, the employee's card was worn, the employee simply forgot to swipe her badge, or the EBR did not record the swipe, the employee would be in a clock ring error because at least one swipe was not recorded by the EBR. Berry Dep., R.27, PageID# 118, 161-62; Harris Dep., R.31, PageID# 575.

At least once per shift, supervisors are required to run Employee Everything Reports to monitor and resolve clock ring errors for employees. Berry Dep., R.27, PageID# 110-11, 172; Harris Dep., R.31, PageID# 575. Supervisors access employees' clock rings via TACS. Berry Dep., R.27, PageID# 172-73. Once an employee swiped her badge and the EBR created a time entry, the employee cannot make changes to her time within the EBR. Tammy Eichelbrener Decl., R.32-4, PageID# 714. The employee must submit a Form 1260 to her supervisor to adjust her time accordingly. Berry Dep., R.27, PageID# 171-75. In other words, supervisors should only manipulate an employee's time with a signed Form 1260 in which the employee certified her time worked and authorized the supervisor to change her time. *Id*. Employees that did not resolve their clock ring errors by pay day, would not be properly paid. *Id*. at 173-75. Additionally, supervisors were not allowed to manipulate their own time. *Id*. at 171-72. If a supervisor needed to make changes to her clock rings, the supervisor also needed to submit a Form 1260 to her immediate supervisor. *Id*.

TACS was by no means a perfect system. When an employee swiped her badge to record her time the Employee Everything Report would show a five-digit EBR number in the EBR column which identified a live clock ring. Michael Brim Dep., R. 28, PageID# 461-62, 481. But when a supervisor manually manipulated an employee's time, the EBR column notated seven zeros and the supervisor's identification number in a later column to identify which supervisor manipulated the time record. *Id.* While TACS was designed to record every swipe or supervisor transaction by differentiating between when an employee swiped her badge or when a supervisor manually manipulated her time, the only safeguard in place for an employee to properly document time worked absent a live clock ring was a paper Form 1260. Clock ring errors were daily occurrences. Berry Dep., R.27, PageID# 172-73. And the EBR malfunctioned in many ways. For example, the EBR would not work in the morning, begin to work during the middle of the day, and be down again at the end of a shift. *Id.* at 211. While the EBR usually made a sound that indicated a swipe did not properly record, it did not always signify when a swipe did not take. *Id.* at 206-07. Regardless of whether the EBR was functioning, USPS supervisors were in the habit of manipulating employees' time without their consent for years.

### iii.    Kelley Harris Admitted She Manipulated Berry's Time Without Berry's Consent for October 10, 2017

Berry was scheduled to work an eight-hour overtime shift on October 10, 2017. Berry Dep., R.27, PageID# 187; Harris Dep., R.31, PageID# 579. Berry arrived at

work, swiped in, and attended the 6:00 am telecom via telephone. Berry Dep., R.27, PageID# 192. Berry swiped out for lunch at 1:57 pm and came back from lunch at 3:15 pm. Harris Dep. Ex. 1, R.31-1, PageID# 609. Berry ended her shift and swiped out when the mail carriers were returning to the station between 4:00 pm and 5:00 pm. Berry Dep., R.27, PageID# 193-94. Berry swiped her badge all four required times on October 10, 2017 and assumed her clock ring was properly recorded. *Id.* at 210-12, 219. Had Berry known the EBR did not properly record her clock ring, Berry would have submitted a Form 1260 to her supervisor, Kelley Harris. *Id.* at 142-44.

Two days later, Berry ran the Employee Everything Reports as a routine part of her 204-b supervisor duties and noticed her clock ring for October 10, 2017 was changed. *Id.* at 197-98. Berry asked her immediate supervisor, Kelley Harris, if Harris had changed her clock ring. *Id.* at 198; Harris Dep. Ex. B, R.31-1, PageID# 641. At work the next day, Harris told Berry she did not know who changed Berry's clock rings and Berry escalated the issue to Harris' supervisor, Patrick "Skip" LaRosa. Berry Dep., R.27, PageID# 198, 233. Eventually Berry escalated the issue to her union and filed a union grievance on October 14, 2017 because Berry properly made her clock rings, no Form 1260 was required, and she received no answers from her supervisor or second level supervisor. *Id.* at 179-81, 399-430.

Berry's grievance proceeded to a Formal A hearing in which Harris insisted Berry did not make her clock rings. *Id.* at 260-64. Harris admitted she was instructed

6

by Postmaster Ignatius Vaccaro to "take time" from Berry. Brim Dep., R.28, PageID#

452-54, 480; Allan Moore, Sr. Dep., R.30, PageID# 514-15, 522; Dean Peruzzi Dep.,

R.29, PageID# 490-91, 493-94,504. Harris further admitted that her identification

number is listed on Berry's Employee Everything Report for October 10, 2017. Harris

Dep., R.31, PageID# 577-78, 609. Harris made the following unauthorized changes to

Berry's time on October 10, 2017:

- Harris entered Berry's BT at 06:00 (6 am) and ET at 15:00 (3 pm) Harris
  Decl., R.32-2, PageID# 701.

- Harris deleted the BT and ET she entered. *Id.*

- Harris re-entered Berry's BT as 07:00 (7 am) and ET as 16:00 (4 pm). *Id.*

Curiously, Harris openly admits she had no idea what time Berry worked on October

10, 2017 and can in no way justify her time entries or deletions for Berry's BT and ET

swipes. Harris Dep., R.31, PageID# 577-78, 609. Instead of requesting a Form 1260

from Berry or at the very least informing Berry she was in a clock ring error, Harris

manipulated Berry's time without Berry's consent and by fabricating Berry's time.[1]

### iv.    Berry was Threatened to Approve the Clock Ring Harris Fabricated or Be Demoted from a Supervisor to a Mail Carrier

---

[1] While it is an employee's responsibility to complete a Form 1260, if an employee swipes her badge and receives no notification from the EBR her swipe was not recorded, the employee has no way of knowing she is in a clock ring error or that a Form 1260 is required. Harris Dep., R.31, PageID# 538-39.

Immediately after the Formal A meeting in which Harris admitted she input Berry's time without Berry's authorization or any knowledge of Berry's hours worked, Harris reported to her supervisor, Skip LaRosa, that she could no longer trust Berry as a supervisor because Berry insisted Harris changed Berry's clock rings. Harris Dep., R.31, PageID# 566. Later in the afternoon, Berry was called down to meet with LaRosa. LaRosa instructed Berry to sign a Form 1260 acknowledging and consenting to Harris's changes to Berry's clock rings or she would be back to carrying mail the next day. Berry Dep., R.27, PageID# 270. Berry refused because she did not instruct Harris to manipulate her time and swiped her badge for each of her four events. *Id*. LaRosa specifically wanted Berry to co-sign Harris' time entries. *Id*. at 271. Berry simply refused to falsify her time record and approve Harris' entries because she knew that offense warranted termination. *Id*. at 271-72. LaRosa immediately demoted Berry and ordered Berry to report to Westland station as a mail carrier the next day. *Id*. at 276-77.

### v.    USPS Routinely Manipulated Clock Rings Which Prompted a Years Long Clock Ring Audit and Involved Direct Instructions from the Postmaster to "Take Time" from Hourly Employees

USPS's common practice of unauthorized clock ring changes was well-known amongst the employees. In fact, in 2017 when Berry discovered her clock ring had been changed without her permission or instruction, USPS was still undergoing a massive clock ring audit from years prior. Michael Brim oversaw the clock ring audit

in Columbus. Brim Dep., R.28, PageID# 451. Brim reviewed clock rings from 2011 to present for unauthorized changes and concluded employees' time records were being manipulated to delete employees' overtime. *Id*. at 455-57.

Even though USPS was undergoing a massive audit that already exposed its wrongdoing, the orders from the Postmaster were still to take time from employees. As part of Berry's job as a 204-b supervisor, she sat in on telecoms with Harris. Berry Dep., R.27, PageID# 235-37. Postmaster Ignatius Vaccaro frequently attended the telecoms and ordered Harris to take away overtime from Berry by close of business. *Id*. To confirm these instructions, Vaccaro sent several emails directing supervisors to take overtime hours and specifically named Berry in at least two emails. Berry MSJ Ex. C, R.33-1, PageID# 1064-66. Needless to say, Berry's suspicions were warranted when she discovered Harris changed her clock rings without her permission.

## VIII. <u>SUMMARY OF ARGUMENT</u>

Berry presented evidence she worked overtime without compensation from USPS and the reason for her demotion was her complaint regarding her unpaid overtime.

The District Court overlooked Berry's contradictions and determined Berry did not present sufficient evidence to establish her FLSA claim or her FLSA retaliation claim. In each instance the District Court decided to weigh conflicting evidence which is beyond the scope of Rule 56 of the Federal Rules of Civil Procedure. When the

Court performed this task, it determined USPS's arguments were factual and that Berry had not presented evidence sufficient to show USPS manipulated her time so as not to pay her overtime. Additionally, the District Court determined USPS's arguments were factual regarding Berry's demotion. Notwithstanding the improper weighing of evidence that occurred, Berry presented evidence to establish she was not compensated for all the overtime she worked and she was demoted because she complained about her unpaid overtime.

### IX.   STANDARD OF REVIEW

This Sixth Circuit Court of Appeals reviews decisions from District Courts granting summary judgment *de novo*. *DePiero v. City of Macedonia*, 180 F.3d 770, 776 (6th Cir. 1999). When a party like Appellee USPS moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has demonstrated that no disputed issue of material fact exists, the burden shifts to the nonmoving party to present evidence of a genuine dispute of a material fact that is resolvable only by a jury. *Id*. at 324. The nonmovant

must "cit[e] to particular parts of materials in the record" to demonstrate the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A). However, it is not sufficient for the nonmoving party to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986). Instead, the nonmoving party must "go beyond the pleadings" and present some type of evidentiary material that demonstrates the existence of a genuine dispute. *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, (1986). Generalized assertions lacking the support of particularized citation required by Rule 56 do not suffice, as a court has no "obligation to 'wade through' the record for specific facts" in support of a party's arguments. *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993) (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108 (6th Cir. 1989)). In this case, Appellant Berry presented testimony from USPS employees and identified documents in the record.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Conversely, material facts in genuine dispute that may reasonably be resolved

in favor of either party" require denial of summary judgment in order to be properly resolved by a jury. *Anderson*, 477 U.S. at 250.

Unlike the district court in this case, when ruling on a motion for summary judgment, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A court must avoid "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," as such are "jury functions" that are inappropriate to employ at the summary judgment stage. *Anderson*, 477 U.S. at 255; *Jones v. Honda of Am. Mfg.*, 2015 U.S. Dist. LEXIS 28682, 31 Am. Disabilities Cas. (BNA) 1127, 2015 WL 1036382 (S.D. Ohio Mar. 9, 2015). In this case, the district court weighed the evidence, which is not its function. It is a jury function. This case should have proceeded to trial.

## X.    ARGUMENT

**A.    The District Court Contravened Fed. R. Civ. P. 56 when it Improperly Weighed Evidence and Granted Summary Judgment to Defendant on Plaintiff's Failure to Pay Overtime FLSA Claim.**

The District Court held Berry failed to establish that she actually performed work for which she was not compensated and therefore, Berry's FLSA claim failed. Order, R.43, PageID# 1518. The District Court then opined that had Berry properly submitted a Form 1260 specifying different times she worked than the times Harris

fabricated, she would have been paid accordingly. *Id*. While the District Court's opinion identified few ways in which the EBR malfunctioned, the District Court took these as the only ways in which the EBR malfunctioned. The EBR was everything but flawless and the District Court weighed the evidence and assumed its perfection except in limited circumstances. Moreover, the District Court accepted Harris' deposition testimony as fact and ignored the circumstances under which the Court deemed Berry was required to submit a Form 1260.

"The judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Conti v. Am. Axle & Mfg.*, 326 F. App'x 900, 913 (6th Cir. 2009) citing *Hazle v. Ford Motor Co.*, 464 Mich. 456, 477, 628 N.W.2d 515, 528 (2001) (noting in response to a motion for summary judgment utilizing indirect evidence the nonmoving party's obligation to is to "show the existence of a genuine issue as to any material fact").

"[A]n FLSA plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012) (quoting *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999). "[I]f an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process." *Id*. While "the employee bears some responsibility for the proper

implementation of the FLSA's overtime provisions" it is not the employee's sole responsibility. *Wood v. Mid-America Mgmt. Corp.*, 192 Fed. App'x 378, 381 (6th Cir. 2006). The employer must pay the employee overtime for which the employer "knows or has reason to believe that [the employee] is continuing to work." 29 F.F.R. § 785.11. In other words, the employer is liable for overtime for which it has constructive knowledge the employee worked.

### i.       *USPS's Timekeeping System was a Catch-22 for Employees*

Berry followed USPS's timekeeping system and is entitled to overtime pay. When an employer sets forth reasonable timekeeping procedures for its employees and the employees fail to follow those procedures, the employer is not liable for overtime. *White*, 699 F.3d at 873. Here Berry consistently maintained she swiped her card all four times on October 10, 2017 and did not know the EBR did not record her BT and ET times. Berry Dep. R.27, PageID# 195. There was nothing to signify to Berry that she needed to complete a Form 1260. Harris certainly did not inform Berry her time was not recorded, and she could have done so mere hours after Berry clocked out of work on October 10, 2017 because Harris manipulated Berry's time card at 6:40 pm the same day. Berry Dep., R.27, PageID# 214; Berry Dep. Ex. 6, R.27-1, PageID#1401. There was simply no way for Berry to know her BT and ET times were not recorded because she swiped her card and assumed the EBR was properly working. Yet the District Court placed blame solely on Berry.

14

While the USPS allows for employees to adjust their time via a paper Form 1260, there is no way for an employee to check whether her time was properly recorded if the EBR does not notify the employee the swipe did not take and only supervisors have access to TACS. Berry Dep., R.27, PageID# 109, 123. Moreover, even if the EBR did signify there was a problem and the employee swiped her badge again, the EBR may have recorded two swipes. Berry Dep., R.27, PageID# 109. USPS' system was inherently flawed, and supervisors were bombarded with Form 1260's because the EBR malfunctioned frequently. Even when the EBR appeared to be working properly, there were still problems with double clock rings forcing supervisors to require employees to fill out Form 1260s.

The District Court weighed the evidence presented and solely placed the responsibility on the employee to fill out a Form 1260. But, there were many situations in which the employee never knew a Form 1260 was required because SHE could not tell there was a problem with the EBR. In that case, the record is clear that the supervisor that ran the Employee Everything Reports and reviewed the clock ring errors notified the employee and provided her with a Form 1260. Berry Dep., R.27, PageID# 121, 137, 139, 143, 152. In other words, if an employee was unaware the EBR did not register her swipe, the supervisor would have to inform the employee she was in a clock ring error to prompt the employee to provide a Form 1260. Harris

blatantly ignored this step and entered whatever time she thought Berry worked without knowing.

The District Court places the blame solely on Berry and weighed the evidence in USPS' favor despite Harris' admission she failed to inform Berry she was in a clock ring error to prompt a Form 1260. In fact, when Harris was confronted with the changes to Berry's time, Harris denied making any changes until Berry identified Harris' identification number on her Employee Everything Report. While USPS's timekeeping system appear to be reasonable, it is inherently flawed and solely allows supervisors to ignore its own policies as Harris proved.

By the time Berry realized she needed a Form 1260, her supervisor and second-level supervisor both denied changes to her time records. When she was finally presented with a Form 1260, it was paired with a direct threat of demotion if she did not sign the Form 1260 as written consenting to Harris' changes. There was simply no opportunity for Berry complete the Form 1260 other than with the time Harris already fabricated. Berry followed USPS' timekeeping policies. Harris did not.

### ii.    The District Court Should Have Applied the Relaxed Standard Because USPS' Time Records are Inaccurate, and USPS Does Not Dispute Berry Worked Overtime on October 10, 2017

"The easiest way to prove that Plaintiff was not compensated for certain work would be to point to the timekeeping records Defendants were obligated to keep." *Hollar v. Cent. Ohio Trauma Sys.*, S.D. Ohio No. 2:18-cv-617, 2020 U.S. Dist. LEXIS

113286, at *8 (Apr. 15, 2020). "However, if the employer kept inaccurate or inadequate records, the plaintiff's burden of proof is relaxed, and, upon satisfaction of that relaxed burden, the onus shifts to the employer to negate the employee's inferential damage estimate. *Myers*, 192 F.3d at 551.

"And employees need not recall their schedules with perfect accuracy in order to avoid summary judgment." *Viet v. Le*, 951 F.3d 818, 824 (6th Cir. 2020). *See also Moran v. Al Basit LLC*, 788 F.3d 201, 205-06 (6th Cir. 2015)(holding plaintiff sufficiently created genuine issue of material fact because plaintiff testified he worked six days per week, arrived at the shop half an hour before it opened, and stayed until the day's work was done); *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 816 (6th Cir. 2015)(holding plaintiff's testimony that he worked more than 40 hours coupled with employer's concession plaintiff worked six days per week was sufficient to establish the plaintiff worked overtime). Berry should have been entitled to a relaxed burden because USPS admitted Berry's time record for October 10, 2017 were inaccurate because Harris had no idea what times Berry worked that day when she input Berry's time.

In this case, Berry pointed directly to the time records that Harris admitted she fabricated. While Harris approved Berry for eight hours of overtime on October 10, 2017, she falsified Berry's time records because she did not know what times Berry worked. Therefore, Berry's time records are inaccurate. There are few things that

17

everyone factually agrees about in this case. One undisputed fact is that October 10, 2017 was the sixth day Berry worked that week and the entire day was overtime. Harris Dep., R.31, PageID# 579. Berry testified she arrived at 6:00 am and was present for the morning telecom and she left when the carriers were coming back to the station between 4:00 pm and 5:00 pm. Berry Dep., R.27, PageID# 193, 196. There is no dispute Berry worked overtime. The question is simply how much overtime Berry worked. Because USPS's time records are inaccurate pursuant to Harris' admission, Berry should be subject to a relaxed standard and is not required to perfectly recall her exact time worked.

The District Court weighed the testimonial evidence and determined Harris did nothing wrong despite her overt admission to falsifying Berry's time records in direct contravention of USPS policy. Berry established she worked overtime and provided an accurate estimate based on the events occurring at the station her around when she began and ended her workday on October 10, 2017. Because Harris fabricated Berry's time records, the burden is on USPS to negate Berry's inferential time worked. USPS presented no evidence to negate Berry's timeline of events. Instead, the record evidence conclusively established Harris falsified Berry's time records and lied to Berry about doing so.

The District Court improperly weighed the evidence and determined USPS did not commit a violation of the FLSA for failing to pay Berry overtime owed. Berry

presented sufficient evidence to establish she worked overtime and USPS did not pay her the proper amount of overtime. This case should have proceeded to trial.

## B. The District Court's Grant of Summary Judgment to USPS is Against the Weight of the Evidence.

The FLSA makes it unlawful for an employer to "discriminate against any employee because such employee has filed any complaint or instituted…any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). Retaliation cases may be proven by either direct or circumstantial evidence. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 1998). Direct evidence does not require the court to infer that unlawful retaliation motivated the employer's adverse employment action. *Pettit v. Steppingstone, Ctr. For the Potentially Gifted*, 429 F.App'x 524, 534 (6th Cir. 2011). If a plaintiff does not present direct evidence, the plaintiff may proceed pursuant to the *McDonnell Douglas* burden shifting framework governing the circumstantial analysis. *Adair v. Charter Cty. Of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006).

At summary judgment Berry presented sufficient direct evidence to support her demotion was motivated by USPS' retaliatory animus. Alternatively, Berry presented sufficient evidence pursuant to the circumstantial framework that USPS' reason for Berry's demotion was not honestly held by USPS and was pretext. The case should have proceeded to trial.

i.     ***Berry Presented Direct Evidence USPS Retaliated Against Berry for Complaining about Unpaid Overtime***

The District Court held Berry failed to present direct evidence of retaliation because Patrick "Skip" LaRosa's comment ordering Berry to sign a Form 1260 required the inference that LaRosa was instructing Berry to ratify Harris' false information. Order, R.43, PageID# 1520. The District Court further explained this inference was required because there "was no evidence that Harris deleted clock rings or entered false information…" *Id*. But the record evidence contradicts the District Court's finding and weighs in favor of Berry. Harris admitted she did not know what time Berry worked and still entered time for Berry, inherently meaning Harris entered false information on Berry's time card. Moreover, Harris admitted she did not have Berry's permission to change Berry's time card because Berry did not fill out a Form 1260. Contrary to the District Court's assertion, there was ample record evidence Harris entered false information on Berry's time record.

Berry presented additional evidence that her demotion was driven by USPS' retaliatory animus because in her conversation with LaRosa, Berry specifically asked whether this was a punishment. Specifically, Berry detailed the conversation as follows:

> Okay. Kelly is – I believe called down to the main office, which is Twin Rivers to talk with Skip Larosa, I believe, about – because the union is involved with my complaint. And she goes downtown and then comes back to South Columbus. As she's coming back to

20

> South Columbus she's like, Skip Larosa wants to see you
> downtown at his office.
>
> So I go downtown to [LaRosa's] office, and he is there with
> Charles Sanders and I believe Nicole Feagen. They are all in that
> same area, and Charles is initially there with me to represent me,
> and Skip sends Charles and Nicole out of the office.
>
> He then says, "Here's a 1260, I need you to sign it for 10/10."
> And I said, "No, that's not right. If you don't sign it, then you will
> go back to carrying mail tomorrow.
>
> And I asked him is this a punishment? And he said, no, it is until
> this is investigated.

Berry Dep., R.27, PageID# 269-70. The meeting with LaRosa occurred on October

27, 2017 which was after USPS' investigation was completed. *Id*. at 269. Moreover,

LaRosa did not ask Berry simply to fill out a Form 1260. He requested she sign an

already completed Form 1260 because USPS's investigation at that point was

completed. This distinction coupled LaRosa's threat to sign the form or be removed

from her supervisory position is sufficient direct evidence that Berry's demotion

would not have occurred but for her complaint and insistence USPS failed to properly

pay her overtime that she worked.

### ii.       *USPS's Reason for Berry's Demotion was Not Honestly Held and was Pretext*

The District Court also analyzed Berry's retaliation claim pursuant to the

circumstantial framework. To prove retaliation by circumstantial evidence, the

plaintiff must show that "(1) [] she engaged in a protected activity under the FLSA;

(2) [] her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection, between the protected activity and the adverse employment action." *Adair*, 452 F.3d at 489. After the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to proffer a legitimate non-discriminatory reason for the adverse employment action. *Id*. Finally, the burden shifts back to the plaintiff to establish defendant's reason is pretext. *Id*.

The District Court held Berry successfully established a *prima facie* case of retaliation and that USPS satisfied its burden for proffering a legitimate-nondiscriminatory reason for Berry's demotion. Specifically, the District Court identified USPS demoted Berry because "of a lack of trust between [Berry] and Harris, which made [Berry] working in a supervisory detail under Harris impracticable." Order, R.43, PageID# 1524. The District Court held Berry's retaliation claim failed on pretext.

a.    Pretext

"To raise a genuine issue of fact as to pretext and defeat a summary judgment motion under this position, [Berry] must show that (1) the proffered reason had no factual basis, (2) the proffered reason did not actually motivate [USPS's] action, or (3) the proffered reason was insufficient to motivate the action." *Adair*, 452 F.3d at 491. The District Court held that USPS honestly believed its proffered reason and that

22

reason was based on particularized facts before it at the time thereby defeating Berry's argument USPS's reason had no basis in fact. Order, R.43, PageID# 1525. Further the District Court reasoned that because the union had conducted an investigation and Berry continued to accuse Harris of misconduct, Berry's pretext argument fails. *Id*. at 1526. However, the District Court's opinion ignores the fact that Harris lied and falsified Berry's time records. Harris input time for Berry when Harris did not know what hours Berry worked. Harris did input BT and ET times for Berry, then deleted those time to adjust the times Harris thought Berry worked without any confirmation or approval from Berry. The time Harris input for Berry on October 10, 2017 clearly has no basis in fact and Berry was justified in her accusations because Harris completely fabricated Berry's hours based on what Harris approved Berry to work and not what time Berry actually worked. Berry maintained she worked more than that and therefore when Harris entered Berry's time, Harris deleted time owed to Berry.

Harris's clear contravention of USPS policy was ignored during the USPS investigation and subsequently by the District Court. However, that does not mean USPS's reason for Berry's demotion was honestly held because the person that accused Berry as being untrustworthy was the same person that fabricated Berry's time. For the District Court to hold Harris is more believable than Berry when Harris openly admitted to falsifying time records is not only nonsensical but required the District Court to assess the credibility of the witnesses, and improperly weigh the

23

evidence. The District Court's conclusion that USPS honestly believed it demoted Berry because Harris' lack of trust in Berry is a direct result of Berry's insistence Harris falsified her time records. It is glaringly obvious that Harris only reported to LaRosa that she could not trust Berry because Harris admitted to falsifying Berry's time and Harris needed to get rid of Berry. The District Court explains this away by suggesting the sticking point was not that the grievance had been filed, but that Berry was unwilling to accept the investigation's findings. Order, R.43, PageID# 1527. This again required the District Court to weigh the evidence and assess the witnesses' credibility. The only person that lied during the grievance investigation, falsified time records, and ignored USPS policy was Harris. LaRosa was well aware that Harris changed Berry's time without Berry's permission because Harris not only admitted it, but also because LaRosa ordered Berry to sign the Form 1260 approving the changes Harris made. Despite the District Court's assertion conclusive evidence exists that USPS honestly believed Harris lost trust in Berry, the evidence suggests otherwise.

Harris acted to salvage her reputation for her own wrongdoings pursuant to instructions that came straight from the top. Postmaster Vaccarro sent multiple emails to Harris and LaRosa instructing them to take time from hourly employees that worked overtime, specifically identifying Berry. Berry's persistence in the validity of her claims caused Harris and LaRosa to protect themselves over facing disciplinary action or termination themselves. Harris specifically knew the seriousness of

falsifying time records and knew it could lead to her termination. The District Court found this evidence insufficient to establish USPS's reason did not actually motivate Berry's demotion and was insufficient to motivate Berry's demotion. Order, R.43, PageID# 1527. But this directly contradicts the District Court's earlier finding that Harris' appreciation for the seriousness of Berry's accusation, "and her feeling that such an accusation could result in [Harris'] own termination, might suggest a motive to suppress grievances, including by unlawful retaliation." *Id.* at 1523.

Berry presented sufficient evidence USPS' reason for her demotion was pretext for retaliatory animus because Berry continued to pursue her FLSA claim.

## XI.   CONCLUSION

Appellant Jacquelyn Berry presented sufficient evidence to the district court on her FLSA failure to pay overtime and retaliation claims that would require trial. Fed.R.Civ.P. 56 does not allow the district court judge to weigh evidence, assess credibility, and make inferences to issue judgment. These functions are exclusively jury functions and any inquiry that requires the judge to use these functions should yield a denial of summary judgment. Appellant Jacquelyn Berry should be allowed to proceed to trial and present her FLSA failure to pay overtime and retaliation claims to a jury. This district court's decision should be reversed.

Respectfully submitted,

KEMP, SCHAEFFER & ROWE CO., L.P.A.

By: /s/Erica Ann Probst
       Erica Ann Probst (0073486)
       Andrea L. Salvino (0097768)
       Attorneys for Plaintiff-Appellant
       88 West Mound Street
       Columbus, Ohio 43215
       (614) 232-8692
       (614) 469-7170 (fax)
       Email: Erica@ksrlegal.com
           ASalvino@ksrlegal.com

## XII.   CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), Erica Ann Probst hereby certifies that this brief complies with the type-volume limitation in Rule 32(a)(7)(B) because this brief contains 6,180 words. This brief complies with the typeface requirements in Rule 32(a)(5)(A) and the type style requirements in Rule 32(a)(6) because this brief has been prepared in proportionally spaced 14-point Times New Roman font.

Dated: <u>September 28, 2022</u>

                    KEMP, SCHAEFFER & ROWE CO., LPA

                    BY: <u>/s/ Erica Ann Probst</u>_____
                          Erica Ann Probst (0073486)

## XIII. CERTIFICATE OF SERVICE

**ERICA ANN PROBST** hereby certifies the following under the penalty of perjury:

On the 28th day of September 2022, I filed the foregoing document electronically and it is available for viewing and downloading from the ECF system. Service was accomplished by means of Notice of Electronic Filing upon:

Kevin Koller
Kevin.Koller@usdoj.gov

Counsel for Defendant-Appellee

KEMP, SCHAEFFER & ROWE
CO., LPA

BY:/s/ Erica Ann Probst
Erica Ann Probst (0073486)

30

## XIV. **DESIGNATION OF RELEVANT COURT DOCUMENTS**

Pursuant to the Sixth Circuit Rules 28(b)(1)(A)(i) and 30(g)(1), Appellant

designates the following docket entries from Docket No. 2:20-cv-5327 in the United

States District Court for the Southern District of Ohio.

| Record Entry No. | Document |
|---|---|
| 1 | Complaint, PageID#1-7; Filed October 9, 2020 |
| 27 | Jacquelyn Berry Deposition, PageID#72-386; Filed January 24, 2022 |
| 27-1 27-2 | Jacquelyn Berry Deposition Exhibits, PageID#387-442; Filed January 24, 2022 |
| 28 | Michael Brim Deposition & Exhibits, PageID#443-481; Filed January 24, 2022 |
| 29 | Dean Peruzzi Deposition & Exhibits, PageID#482-505; Filed January 24, 2022 |
| 30 | Allan Moore, Sr. Deposition & Exhibits, PageID#506-522; Filed January 24, 2022 |
| 31 | Kelley Harris Deposition, PageID#523-597; Filed January 24, 2022 |
| 31-1 | Kelley Harris Deposition Exhibits, PageID#598-645; Filed January 24, 2022 |
| 32 | USPS Motion for Summary Judgment, PageID#646-1034; Filed January 28, 2022 |
| 32-2 | USPS Motion for Summary Judgment Exhibit 2, Kelley Harris Decl., PageID#699-710; Filed January 28, 2022 |
| 32-4 | USPS Motion for Summary Judgment Exhibit 4, Tammy Eichelbrener Decl., PageID#712-839; Filed January 28, 2022 |
| 33 | Berry Motion for Summary Judgment & Exhibits, PageID#1035-84; Filed January 28, 2022 |
| 37 | USPS Memorandum Contra to Berry's Motion for Summary Judgment, PageID#1090-1179; Filed March 4, 2022 |
| 38 | Berry's Memorandum Contra to USPS' Motion for Summary Judgment, PageID#1180-1225; Filed March 4, 2022 |
| 41 | Berry's Reply in Support of her Motion for Summary Judgment, PageID#1458-76; Filed March 18, 2022 |
| 42 | USPS Reply in Support of its Motion for Summary Judgment, PageID#1477-1501; Filed March 18, 2022 |

| 43 | District Court Opinion & Order, PageID#1502-1528; Filed June 6, 2022 |